UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

KEVIN KELLIHER,
an individual,

       Plaintiff,                                Case No. 19- 19-13316
                                                                      Hon.

vs.

DXC TECHNOLOGY SERVICES, LLC
a Domestic Limited Liability Company, and
ANURADHA BALASUBRAMANIAM,
a foreign individual,

       Defendants.

---

DILLON & DILLON, P.L.C.
Paul J. Dillon (P46913)
Attorney for Plaintiffs
9429 S. Main Street
Plymouth, MI 48170
(734) 455-9000
pjdillon@ddplc.net

---

## COMPLAINT

      Plaintiff, KEVIN KELLIHER, by and through his attorneys, DILLON & DILLON, P.L.C., hereby makes the following Complaint:

## JURISDICTION

      1.     Plaintiff KEVIN KELLIHER ("Plaintiff" or "KELLIHER") was, at all times relevant to this Complaint, a resident of the County of Genesee, State of

Michigan.

2.      Defendant DXC TECHNOLOGY SERVICES LLC ("Defendant Company" or "DXC") is a limited liability company incorporated in the state of Delaware, with its headquarters in Tysons, Virginia. At all times relevant to this Complaint, DXC maintained an office in Auburn Hills, Oakland County, Michigan.

3.      Defendant ANURADHA BALASUBRAMANIAM ("Defendant Supervisor" or "BALASUBRAMANIAM") was, at all times relevant to this Complaint, the individual employed by DXC with direct supervisory authority over Plaintiff, including the authority to evaluate, promote, transfer, demote and/or otherwise discipline Plaintiff. BALASUBRAMANIAM has a work address of DXC Technology, HP Avenue 39/40, Electronic City Hosur Road, Bangalore 560100, India. However, BALASUBRAMANIAM travels to DXC's Auburn Hills facility from time to time to perform her job functions, including the supervision and management of personnel in Michigan and in the United States. Otherwise, from her location in India, BALASUBRAMANIAM regularly supervises and effects the job performances of numerous persons within Michigan and within the United States, including Plaintiff.

4.      The amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000) exclusive of interest and costs.

5. This Court has jurisdiction of the federal claims asserted herein pursuant to 28 USC 1331. This Court has supplemental jurisdiction over the claims arising under the law of the State of Michigan pursuant to 28 USC 1367 and the principles of pendent jurisdiction.

6. The unlawful employment practices complained of in this complaint occurred within the Eastern District of Michigan, and venue is proper within this District and Division pursuant to 28 U.S.C. §1391(a).

## GENERAL ALLEGATIONS

7. Plaintiff was born in 1961.

8. Plaintiff is Caucasian and of American nation origin and ethnicity.

9. Plaintiff began working for Electronic Data Systems Corporation ("EDS"), a predecessor entity to DXC, on June 2, 1986 as a systems analyst.

10. In 2008, EDS was purchased by Hewlett-Packard Company.

11. By 2009, EDS had become a business unit of Hewlett-Packard Company and changed its name to HP Enterprise Services.

12. In 2017, the HP Enterprise Services business unit merged with Computer Science Corporation to form Defendant DXC Technology Services LLC.

13. At this time, DXC has approximately 130,000 employees worldwide, over 3,000 of which are in Michigan. DXC Technology Company is a Fortune 500

company and is represented in the S&P 500 Index.

14. Prior to this merger, Plaintiff had excelled at each of his employment positions with DXC's predecessor companies receiving consistently above average or outstanding performance evaluations, and ultimately being promoted to the position of Executive Director in HP Enterprise Services' business unit where he was responsible for approximately 5,000 employees supporting over 150 clients in 34 countries.

15. After the merger and formation of DXC, Plaintiff continued his excellent performance as a director in the DXC organization. Immediately after the merger, Plaintiff was reporting to Rajnish Tiwari who was in charge of DXC's Business Process Services - Delivery on a global basis. Plaintiff was responsible for that portion of Tiwari's reporting structure that operated in the Americas region.

16. During this period of time, Tiwari supervised Plaintiff while Tiwari was located in Bengaluru, India.

17. One of Tiwari's responsibilities as Plaintiff's supervisor was to evaluate Plaintiff's performance on a regular basis which Tiwari did giving Plaintiff an above average evaluation.

18. In approximately June 2018, Tiwari left the DXC organization, and BALASUBRAMANIAM was appointed to Tiwari's position.

19. Almost immediately upon becoming Plaintiff's supervisor, BALASUBRAMANIAM stated to Plaintiff that she felt Plaintiff was too old for the position he was in, and that he would not able to keep up with her younger workers, particularly those in India.

20. A substantial amount of the work done by Plaintiff and his colleagues at DXC was via teleconferences and shortly after becoming Plaintiff's supervisor, BALASUBRAMANIAM began a pattern of berating and belittling Plaintiff on conference calls in front of his co-workers, often times screaming at Plaintiff at the top of her lungs.

21. Also almost immediately upon becoming Plaintiff's supervisor, BALASUBRAMANIAM began a pattern of creating unrealistic and often irrelevant performance objectives for Plaintiff and when Plaintiff would either fulfill or otherwise address those items, BALASUBRAMANIAM would ignore Plaintiff's submissions or feedback and create new items.

22. Shortly thereafter, BALASUBRAMANIAM began to dismantle the organization under Plaintiff, either reassigning those people that reported to Plaintiff or having them report to others.

23. Although Plaintiff had never been evaluated below 'above-average', BALASUBRAMANIAM evaluated Plaintiff with the worst ranking possible.

24. On at least two separate occasions, BALASUBRAMANIAM blocked

Plaintiff from being promoted to positions that represented significant increases in authority, compensation and stature within the DXC organization.

25. Plaintiff maintains that BALASUBRAMANIAM conduct toward Plaintiff was on account of her animosity toward Plaintiff which in turn was on account of Plaintiff's age and national origin.

26. In addition to statements made directly to him, the basis for BALASUBRAMANIAM's animosity toward Plaintiff on account of his age and national origin was clearly expressed in a particular outburst on a conference call with BALASUBRAMANIAM wherein she stated that she wanted to replace older personnel such as Plaintiff with younger, Indian personnel.

27. The basis of BALASUBRAMANIAM's animosity toward Plaintiff was further demonstrated by BALASUBRAMANIAM's selective blocking of Plaintiff for promotional opportunities and assigning unwarranted low performance evaluations, particularly when compared to others.

28. Plaintiff repeatedly raised concerns about his mistreatment by BALASUBRAMANIAM with DXC's human resources, labor relations and ethics departments.

29. In addition, Plaintiff made it known to DXC personnel that he intended to file a Charge of Discrimination with the United States Equal Employment Opportunity Commission which he did on or about March 14, 2019.

6

30. On information and belief, DXC conducted multiple investigations which corroborated Plaintiff's complaints.

31. In response to him informing his employer of his intention to file a charge with the EEOC, DXC and BALASUBRAMANIAM developed another approach toward Plaintiff which was to systematically ignore and ostracize him. For example, despite the fact that BALASUBRAMANIAM continues to be his direct supervisor, BALASUBRAMANIAM has refused to have any contact with Plaintiff. Also during this time, Plaintiff has been denied access to various training and career development opportunities, and BALASUBRAMANIAM and DXC continue to otherwise ostracize him.

32. The wrongful conduct to which Plaintiff has been subjected has severely damaged Plaintiff's professional career, as well as having caused significant non-economic damages.

33. Plaintiff continues to be subjected to some or all of the discriminatory and hostile treatment and retaliation described herein.

34. On September 16, 2019, the EEOC issued an order closing its file and advising Plaintiff of his rights to bring suit directly against DXC.

## COUNT I
## VIOLATION OF THE CIVIL RIGHTS ACT:
## NATIONAL ORIGIN DISCRIMINATION AND RETALIATION

35. Plaintiff incorporates by reference all facts and allegations elsewhere

set forth in this Complaint.

36. At all times relevant hereto Plaintiff was qualified for protection against national origin discrimination under the Civil Rights Act 1967, as amended, hereinafter referred to as the "CRA".

37. Pursuant to the CRA, including without limitation, 42 U.S.C. §2000e, it shall be unlawful for an employer:

> a. to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> b. to limit, segregate, or classify their employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect their status as an employee, because of such individual's race, color, religion, sex, or national origin.

38. Defendants are employers within the meaning of the CRA.

39. Defendants wrongfully discriminated against Plaintiff on account of his national origin and violated the CRA in several particulars, including without limitation:

> a. Subjecting Plaintiff to harassing or otherwise unlawful statements regarding his national origin and ethnicity;
>
> b. Depriving Plaintiff of appropriate managerial support;

    c.    Dismantling Plaintiff's organization;

    d.    Undermining Plaintiff's efforts to perform his job responsibilities;

    e.    Depriving Plaintiff of training opportunities;

    f.    Depriving Plaintiff of fair evaluations;

    g.    Depriving Plaintiff of opportunities for better job assignments;

    h.    Depriving Plaintiff of opportunities for job assignments outside of the influence of those personnel engaged in discriminating against him;

    i.    Other acts of discrimination to be determined through discovery.

40. Plaintiff complained to DXC's human resources, labor relations and ethics departments about the discriminatory treatment to which he was being subjected.

41. Rather than appropriately addressing the problem, Plaintiff was subjected to additional discriminatory conduct in retaliation for making such complaints, including continuation of the aforementioned wrongful conduct.

42. Retaliation for exercising one's rights under the CRA is also a violation of the CRA.

43. As a result of Defendants' discriminatory and retaliatory conduct toward Plaintiff, Plaintiff has suffered substantial economic and non-economic injuries and damages, past and future, including, but not limited to:

    a. Loss of wages and other compensation, both in the past and in the future;

    b. Loss of the value of benefits, both in the past and in the future;

    c. Loss of earning capacity;

    d. Loss of promotional opportunities;

    e. Non-economic damages including without limitation damages for mental anguish, anxiety, stress, humiliation, embarrassment, and damage to reputation.

    f. Other injuries and damages that become known through the discovery process.

44. Plaintiff also seeks equitable relief, including back-pay, front-pay, and other equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, liquidated damages, and attorney fees as allowed by law.

## COUNT II
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT: NATIONAL ORIGIN DISCRIMINATION AND RETALIATION

45. Plaintiff incorporates by reference all facts and allegations elsewhere set forth in this Complaint.

46. At all times relevant hereto Plaintiff was qualified for protection against national origin discrimination under the Elliot-Larsen Civil Rights Act, hereinafter referred to as the "ELCRA", Michigan Compiled Laws ("MCL") 37.2012, *et seq*.

47. Pursuant to the ELCRA, it is unlawful for an employer to discriminate against an employee with respect to any aspect of employment on account of national origin.

48. At all times relevant hereto, Defendants were "employers" within the meaning of §201(a) of the ELCRA.

49. Defendants wrongfully discriminated against Plaintiff on account of his national origin and violated the ELCRA in several particulars, including without limitation:

    a. Subjecting Plaintiff to harassing or otherwise unlawful statements regarding his national origin and ethnicity;

    b. Depriving Plaintiff of appropriate managerial support;

    c. Dismantling Plaintiff's organization;

  d. Undermining Plaintiff's efforts to perform his job responsibilities;

  e. Depriving Plaintiff of training opportunities;

  f. Depriving Plaintiff of fair evaluations;

  g. Depriving Plaintiff of opportunities for better job assignments;

  h. Depriving Plaintiff of opportunities for job assignments outside of the influence of those personnel engaged in discriminating against him;

  i. Other acts of discrimination to be determined through discovery.

50. Plaintiff complained to DXC's human resources, labor relations and ethics departments about the discriminatory treatment to which he was being subjected.

51. Rather than appropriately addressing the problem, Plaintiff was subjected to additional discriminatory conduct in retaliation for making such complaints, including continuation of the aforementioned wrongful conduct.

52. Retaliation for exercising one's rights under the ELCRA is also a violation of the ELCRA.

53. As a result of Defendants' discriminatory and retaliatory conduct toward Plaintiff, Plaintiff has suffered substantial economic and non-economic injuries and damages, past and future, including, but not limited to:

    a.    Loss of wages and other compensation, both in the past and in the future;

    b.    Loss of the value of benefits, both in the past and in the future;

    c.    Loss of earning capacity;

    d.    Loss of promotional opportunities;

    e.    Non-economic damages including without limitation damages for mental anguish, anxiety, stress, humiliation, embarrassment, and damage to reputation.

    f.    Other injuries and damages that become known through the discovery process.

54. Plaintiff also seeks equitable relief, including back-pay, front-pay, and other equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, liquidated damages, and attorney fees as allowed by law.

## COUNT III
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

55. Plaintiff incorporates by reference all facts and allegations elsewhere set forth in this Complaint.

56. At all times relevant hereto Plaintiff was qualified for protection against age discrimination under the Age Discrimination in Employment Act of 1967, as amended, hereinafter referred to as the "ADEA".

57. Pursuant to the ADEA, including without limitation 29 U.S.C. §623(a), it shall be unlawful for an employer to fail or otherwise refuse to hire or to discharge any individual or otherwise discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age.

58. Defendants are employers within the meaning of the ADEA.

59. Defendants discriminated against Plaintiff on account of his age and violated the ADEA in several particulars, including without limitation:

    a. Subjecting Plaintiff to harassing or otherwise unlawful statements regarding his age;

    b. Depriving Plaintiff of appropriate managerial support;

    c. Dismantling Plaintiff's organization;

    d. Undermining Plaintiff's efforts to perform his job responsibilities;

    e. Depriving Plaintiff of training opportunities;

    f. Depriving Plaintiff of fair evaluations;

    g. Depriving Plaintiff of opportunities for better job assignments;

      h.      Depriving Plaintiff of opportunities for job assignments outside of the influence of those personnel engaged in discriminating against him;

      i.      Other acts of discrimination to be determined through discovery.

60. Plaintiff complained to DXC's human resources, labor relations and ethics departments about the discriminatory treatment to which he was being subjected.

61. Rather than appropriately addressing the problem, Plaintiff was subjected to additional discriminatory conduct in retaliation for making such complaints, including continuation of the aforementioned wrongful conduct.

62. Retaliation for exercising one's rights under the ADEA is also a violation of the ADEA.

63. As a result of Defendants' discriminatory and retaliatory conduct toward Plaintiff, Plaintiff has suffered substantial economic and non-economic injuries and damages, past and future, including, but not limited to:

      a.      Loss of wages and other compensation, both in the past and in the future;

      b.      Loss of the value of benefits, both in the past and in the future;

      c.      Loss of earning capacity;

      d.      Loss of promotional opportunities;

  e. Non-economic damages including without limitation damages for mental anguish, anxiety, stress, humiliation, embarrassment, and damage to reputation.

  f. Other injuries and damages that become known through the discovery process.

64. Plaintiff also seeks equitable relief, including back-pay, front-pay, and other equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, liquidated damages, and attorney fees as allowed by law.

### COUNT IV
### VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT: AGE DISCRIMINATION AND RETALIATION

65. Plaintiff incorporates by reference all facts and allegations elsewhere set forth in this Complaint.

66. At all times relevant hereto Plaintiff was qualified for protection against age discrimination under the ELCRA.

67. Pursuant to the ELCRA, it is unlawful for an employer to discriminate against an employee with respect to any aspect of employment on account of age.

68. At all times relevant hereto, Defendants were "employers" within the

meaning of §201(a) of the ELCRA.

69. Defendants wrongfully discriminated against Plaintiff on account of his age and violated the ELCRA in several particulars, including without limitation:

    a. Subjecting Plaintiff to harassing or otherwise unlawful statements regarding his age;

    b. Depriving Plaintiff of appropriate managerial support;

    c. Dismantling Plaintiff's organization;

    d. Undermining Plaintiff's efforts to perform his job responsibilities;

    e. Depriving Plaintiff of training opportunities;

    f. Depriving Plaintiff of fair evaluations;

    g. Depriving Plaintiff of opportunities for better job assignments;

    h. Depriving Plaintiff of opportunities for job assignments outside of the influence of those personnel engaged in discriminating against him;

    i. Other acts of discrimination to be determined through discovery.

70. Plaintiff complained to DXC's human resources, labor relations and ethics departments about the discriminatory treatment to which he was being subjected.

71. Rather than appropriately addressing the problem, Plaintiff was subjected to additional discriminatory conduct in retaliation for making such complaints, including continuation of the aforementioned wrongful conduct.

72. Retaliation for exercising one's rights under the ELCRA is also a violation of the ELCRA.

73. As a result of Defendants' discriminatory and retaliatory conduct toward Plaintiff, Plaintiff has suffered substantial economic and non-economic injuries and damages, past and future, including, but not limited to:

    a. Loss of wages and other compensation, both in the past and in the future;

    b. Loss of the value of benefits, both in the past and in the future;

    c. Loss of earning capacity;

    d. Loss of promotional opportunities;

    e. Non-economic damages including without limitation damages for mental anguish, anxiety, stress, humiliation, embarrassment, and damage to reputation.

    f. Other injuries and damages that become known through the discovery process.

74. Plaintiff also seeks equitable relief, including back-pay, front-pay, and other equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, liquidated damages, and attorney fees as allowed by law.

## COUNT V
## VIOLATION OF THE
## BULLARD-PLAWECKI EMPLOYEE RIGHT TO KNOW ACT

75. Plaintiff incorporates by reference all facts and allegations elsewhere set forth in this Complaint.

76. On September 19, 2019, Plaintiff made a written request for all copies of his employee files pursuant to the Bullard-Plawecki Employee Right to Know Act ("BPERKA"), MCL § 423.581.

77. Pursuant to § 423.581 of BPERKA, an employee has a right to review, copy and respond to any personnel record maintained by their employer.

78. To date, Defendant has willfully failed and/or refused to comply with Defendant's requests for his employment records and personnel file, and accordingly, has been the opportunity to exercise his rights pursuant to BPERKA.

79. BPERKA provides for damages for violations of the act, including an award of actual damages and attorney fees.

WHEREFORE, Plaintiff prays for judgment against Defendant DXC in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, liquidated damages, and attorney fees as allowed by law.

## JURY DEMAND

Plaintiff requests a jury trial in the above entitled cause.

Respectfully submitted,

DILLON & DILLON, P.L.C.

BY: /s/ Paul J. Dillon
Paul J. Dillon (P46913)
Attorney for Plaintiff
9429 S. Main Street
Plymouth, MI 48170
(734) 455-9000

November 11, 2019        pjdillon@ddplc.net